### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **TOMAS DELEON, III,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **No. CIV-06-171-L** |
| | ) | |
| **RANDALL WORKMAN,** | ) | |
| | ) | |
| **Respondent** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

Petitioner, a state prisoner appearing through counsel, brings this action pursuant to 28 U.S.C. § 2254 seeking a writ of habeas corpus.  Pursuant to an order of United States District Judge Tim Leonard, the matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Respondent has filed a response to the petition and Petitioner has replied.   Thus the matter is at issue. For the reasons set forth herein, it is recommended that the petition be denied.

By this action, Petitioner challenges his convictions on five counts of lewd molestation.   Case No. CF-2003-149, District Court of Stephens County.   Petitioner was sentenced to ten years imprisonment on Count 1, one year imprisonment on Counts 2, 4, and 5, and three years on Count 3.   Petitioner filed a direct appeal with the Oklahoma Court of Criminal Appeals, which affirmed his convictions on November 24, 2004. <u>DeLeon v. State</u>, No. F-2003-959 (Okla. Crim. App., Nov. 24, 2004) (attached as Exhibit F to Response). Petitioner did not file any applications for state post-conviction relief.

Petitioner raises seven grounds for relief in support of his petition.  In Ground One, he alleges that he received ineffective assistance of trial counsel. Brief in Support

of Petition, p. 12.  In Ground Two, he alleges prosecutorial misconduct.  Brief in Support

of Petition, p. 42.  In his third ground for relief, Petitioner claims that the trial court erred

in admitting evidence of other crimes, and that the error was exacerbated by confusing

jury instructions regarding that evidence, depriving him of a fundamentally fair trial.

Brief in Support of Petition, p. 48.  In Ground Four, he alleges that the trial court erred

in failing to ensure that there was a complete record available for appeal, depriving him

of a fundamentally fair trial. Brief in Support of Petition, p. 57.  In Ground Five, he claims

that the evidence was insufficient with regard to Counts 3, 4, and 5.  Brief in Support of

Petition, p. 64.   In Ground Six, he alleges that there was insufficient evidence to bind

him over on Count 4 following the preliminary hearing. Brief in Support of Petition, p.

68.  In Ground Seven, he alleges that the cumulative effect of the errors raised in Grounds

One through Six deprived him of a fundamentally fair trial. Brief in Support of Petition,

p. 74.

## I. BACKGROUND

Petitioner, who at the time was a police officer in Marlow, Oklahoma, was charged

with five counts of molestation that occurred on various weekends in the Spring of 2003.

Three of the counts of lewd molestation were to have occurred on or about mid-March

2003 through the end of April 2003, and two counts were to have occurred on May 2, 2003.

<u>See</u> Response, Ex. J (Trial Information).[1]   During this time, Michelle Ortego was the

girlfriend of Petitioner; she, together with her two children M and CC, often spent the night

---

[1]The facts contained in this section are taken from the briefs on direct appeal. <u>See</u> Response, Ex.
A, p. 2-8; Ex. C, p. 2-5.

at Petitioner's residence.  Ms. Ortego's daughter, M, often had her friends MH, BJ and KLR over to spend the night with her at Petitioner's home.  KLR testified that when she had been invited by M to Petitioner's home with M's brother CC to watch a movie, Petitioner asked her if she was cold, and invited her to sit with him on a love seat under a blanket. He started touching her leg and then moved his hand up to her vagina.  On another occasion upon which KLR, M, MH, and a male friend TP, were spending the night at Petitioner's, he called each of the children into his bedroom because he thought they had been drinking.  After talking to MH, Petitioner hugged her and put his hand on her buttocks.  He did the same with KLR.  The next morning, Petitioner called KLR into the bathroom, asked her if she knew what oral sex was, and asked her if she wanted to try it. She said no, and left the bathroom.  The final two incidents occurred on May 2, 2003, when BJ, KLR, and M together with Michelle Ortego's son CC, and Petitioner's son JL, were watching a movie in JL's room.  Petitioner asked the girls – who were laying together on a pallet on the floor – if he could watch the movie with them.  BJ testified that Petitioner laid down beside her and rubbed her upper leg.  KLR testified that Petitioner later laid beside her, licked her ear, and touched her on the bottom.

## II.  STANDARD FOR GRANTING A PETITION FOR A WRIT OF HABEAS CORPUS

For factual and legal issues that have already been adjudicated in state court, the Court may only grant a writ of habeas corpus if that adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(1) and (2).

A state court's determination is contrary to clearly established federal law where it applies a rule that contradicts the law set forth in Supreme Court cases, or confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result. Williams v. Taylor, 529 U.S. 362, 405-06 (2000). A state court's determination involves an unreasonable application of clearly established Supreme Court precedent if it identifies the correct governing legal principle from the Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Id. at 413; see also Wiggins v. Smith, 539 U.S. 510, 520 (2003). It is not enough that the state court applied clearly established federal law erroneously or incorrectly; the application must also be unreasonable. Williams, 529 U.S. at 410-11; Valdez v. Bravo, 373 F.3d 1093, 1096 (10th Cir.), cert. denied, 543 U.S. 1008 (2004).

## III. DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL

In Ground One, Petitioner claims that he was denied the effective assistance of trial counsel in violation of the Sixth Amendment. Brief in Support of Petition, p. 12. Petitioner raised this same claim on direct appeal, and the Oklahoma Court of Criminal Appeals found that Petitioner had not shown that counsel's conduct was deficient nor had he provided sufficient information to show that there is a strong possibility trial counsel was ineffective. Summary Opinion, p. 3. In reaching its decision, the Court relied upon the familiar case of Strickland v. Washington, 466 U.S. 668, 689 (1984).

In recent years, the Supreme Court has reiterated the legal principles governing claims of ineffective assistance of counsel first set forth in Strickland:

We established the legal principles that govern claims of ineffective assistance of counsel in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984 ). An ineffective assistance claim has two components: A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. To establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." We have declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms."

<u>Wiggins v. Smith</u>, 539 U.S. 510, 521 (2003) (quoting <u>Strickland</u>) (internal citations omitted). To be constitutionally deficient, counsel's performance must have been completely unreasonable, not merely wrong. <u>Hoxsie v. Kerby</u>, 108 F.3d 1239, 1246 (10th Cir. 1997). Additionally, Petitioner must overcome the presumption that, under the circumstances, the challenged representation "might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689.

To establish prejudice under the <u>Strickland</u> standard, a "'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Wiggins</u>, 539 U.S. at 534 (quoting <u>Strickland</u>). There is no reason to address both components of the <u>Strickland</u> inquiry if a petitioner makes an insufficient showing on one, and thus "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." <u>Strickland</u>, 466 U.S. at 697. In support of his claim of ineffective assistance of trial counsel, Petitioner includes five separate categories of alleged deficiencies. However, two of those – related to prosecutorial

misconduct and failure to move to quash the information as to Count 4 – will be addressed with the substance of those claims.

### 1.  Failure to Develop Conspiracy and "Alibi" Defenses

First, Petitioner claims that counsel failed to fully develop his conspiracy and "alibi" defenses at trial.  Brief in Support of Petition, p. 16.  More specifically, he claims that trial counsel "failed to delve deeply enough in both direct and cross-examination of various witnesses with regard to the conspiracy defense," and failed to use an Oklahoma State Bureau of Investigation (OSBI) report and a family videotape to attack the credibility of one of the victims by showing that a friend whom she testified was always there during the incidents could not have been on the weekend upon which the offenses charged in Counts 2 and 5 took place.  Brief in Support of Petition, p.18, 22. Respondent contends that trial counsel did present evidence regarding the conspiracy theory and argued the point in closing.  Response, p. 7-8.  With regard to the so-called "alibi" defense, Respondent notes that the victims never claimed to have known the exact dates of the offenses, and that attempting to pin the alleged molestations down to a particular date would have conflicted with trial counsel's strategy of attacking the credibility of the victims by virtue of the fact that they could not remember specific dates. Response, p. 10-11.

The undersigned agrees that trial counsel was not ineffective with regard to either of these aspects of Petitioner's defense.  First, as Respondent argues, trial counsel did raise the issue of "conspiracy," by introducing evidence that the victims were first taken to a man who was behind a petition against the Marlow Police Department, Jim Littrell, and was taken there by Littrell's former employee, Melanie Henson.  Counsel also

introduced evidence suggesting that Petitioner had angered Mr. Littrell by arresting Littrell's grandson, and that he had also arrested family members of the victims.  Tr. Vol. II, p. 89, l. 8-16; p. 105, l. 22-24; p. 111, l. 9-25; p. 112, l. 1-12; p. 164, l. 23-25; p. 165, l. 1-9; p. 229, l. 4-22; p. 235, l. 16-25; p. 236, l. 1-2; p. 247, l. 11-25; p. 259, l. 9-25; p. 260, l. 1-23; p. 261, l. 1-16.  In fact, Petitioner concedes the substantial effort made by trial counsel to develop this theory, but faults counsel for not "effectively" examining witnesses.  Brief in Support of Petition, p. 20.  However, "[w]hen an ineffective assistance claim centers on a failure to investigate and elicit testimony from witnesses, the petitioner must 'demonstrate, with some precision, the content of the testimony they would have given at trial.'"  Martinez v. Tafoya, 13 Fed. Appx. 873, 877, 2001 WL 811662,  at *2-3 (10th Cir. July 17, 2001)[2]  (quoting Lawrence v. Armontrout, 900 F.2d 127, 130 (8th Cir. 1990)).  Counsel's decisions as to how to most effectively examine witnesses to bring matters before the jury are strategic decisions, and Petitioner has not overcome the presumption that, under the circumstances, the challenged strategy was a sound one. See Strickland, 466 U.S. at 689.  Here, Petitioner's trial counsel brought the conspiracy theory before the jury, and while she could have delved deeper in her examination and cross-examination of the witnesses, she certainly caused the prosecutor enough concern that he spent considerable effort asking questions on this subject in an apparent effort to resolve any juror's concerns on the theory.  See e.g. Vol. II,  p. 230, l. 1-5; p. 245, l. 8-24; p. 246, l. 1-14; p. 247, l. 11-25; p. 248, l. 1-5.  Further, Petitioner has

---

[2]This and any other unpublished disposition are cited herein for persuasive authority pursuant to Tenth Circuit Rule 36.3.

not shown what other evidence would have been brought out through trial counsel's further questioning of any witness – in particular the questioning of Mr. Littrell.  As it was, trial counsel was able to plant the seed of the conspiracy theory without drawing too much attention to the other explanation for Ms. Henson's decision to take the victims to Mr. Littrell first – that is that the alleged perpetrator was a current member of the police force and, as a former police officer, Littrell would know where to go under those circumstances.

Petitioner also faults trial counsel for her "failure to adequately highlight during closing argument" the evidence supporting his conspiracy defense.  Brief in Support of Petition, p. 20.  In closing argument, trial counsel both directly suggested that Jim Littrell might be behind the allegations, because once the victims made their allegations known they were taken directly to a bar/restaurant operated by him, and also brought the fact out in passing on two other occasions.  Tr. Vol. II, p. 301, l. 7-9; p. 302, l. 20-23; p. 304, l. 1-10. This treatment of the "conspiracy" was consistent with trial counsel's strategy of approaching the victims' alleged dissembling as something of a mystery to Petitioner – as something that he could not explain.  Because there are any number of ways to approach the defense under these circumstances, it is not for the Court to second-guess such strategic decisions.  See Hooper v. Mullin, 314 F.3d 1162, 1169 (10th Cir. 2002).

Trial counsel's strategic decision was clearly inconsistent with Petitioner's suggested "alibi" defense, and moreover, was reasonable.  Petitioner argues that trial counsel should have presented this defense by (1) using an OSBI interview report to impeach the victims who testified at trial that they could not remember the exact dates

8

of the incidents which were the subject of Counts 2 and 5 – a report in which they gave the exact date of April 18, 2003; and (2) then using a videotape of a family gathering to prove that another friend who according to the testimony of the victims was supposedly present on that date was out-of-state.  Brief in Support of Petition, p. 22.  Respondent contends that this was inconsistent with the strategy actually adopted by trial counsel, which was to emphasize that girls of the victims' ages would have known the dates that such traumatic events happened.  Response, p. 10.  The undersigned agrees.

Obviously the children were not definitive on the dates of the incidents, as can be seen from the charging information in which the State charged Counts 2 and 5 as occurring "on or about mid March, 2003 through the end of April, 2003 . . . ."  Response, Ex. J.  Although the Court is not privy to discovery in the case, trial counsel likely knew what the victims would testify to with regard to this issue.  Neither KLR nor MH testified as to any specific dates; therefore, while trial counsel may have inquired, it was likely that any attempt to use the OSBI reports in the  manner suggested would have simply resulted in testimony that the dates contained therein were not definitive. See Tr. Vol. II, p. 121, l. 17-25; p. 122, l. 1-7.

In fact, trial counsel emphasized the victims' inability to hone in on a date with regard to the incidents forming the basis of Counts 2 and 5, and then in closing argument she stated:

> One of the first issues that comes up in this case when you look at the paperwork that you have got that makes it hard for someone to defend is the time.  The last incident, yes, there's a time there because they went to Jim Littrell's house the next evening.  But you have got a case with [MH] saying she was hugged somewhere between March and May, and that carries, just like the other counts, it carries one year to twenty years and up

to a ten thousand dollar fine.  You can see his position.  It didn't happen
and nobody can say what day it happened.  How do you prove something
that happened or was supposed to have happened in your own house when
nobody is saying when.
...

But you know, these little girls are twelve years old.  They're not stupid. I
would – they're not.  You listen to them, they're not stupid.  They're smart
little girls.  When you don't know if something happened or you know it
didn't, it's real hard to pick a date.  But if you're a twelve year old little girl,
young lady, you should know when something happened if it was that
traumatic between March and May.

Tr. II, Vol. II, p. 301, l. 5-16; 305, l. 6-13.  See also Tr. Vol. II, p. 73, l. 11-18; p. 81, l. 10-15;

p. 84, l. 15-22; p. 108, l. 1-2; p. 122, 18-25; p. 123, l. 1-4.  Because the defense Petitioner

contends should have been pursued did not conclusively eliminate *all* dates upon which

the incidents could have occurred, the undersigned finds that trial counsel was not

ineffective for failing to use this so-called alibi strategy.

### 2.  Failing to Object to Hearsay and Other Crimes Evidence

Next, Petitioner contends that trial counsel was ineffective for failing to object

when the State asked his girlfriend, Michelle Ortego, whether she had given up custody

of her daughter to her sister. Brief in Support of Petition, p. 32.  Petitioner also claims

that trial counsel should have objected to a line of questioning regarding a complaint

filed with the Marlow Police Department against Petitioner by an Amanda Watson, who

alleged that Petitioner and another officer were having a party with underage girls

present.  Brief in Support of Petition, p. 33. He claims that the questioning continued to

include another part of the complaint in which Ms. Watson alleged that "she had heard"

that Petitioner and another officer had bragged about taking underage girls to clubs in

Lawton, Oklahoma.  Id.  Respondent contends that in both cases the questions were

asked to impeach defense witnesses, and that objections would have been unsuccessful. The undersigned agrees.

Michelle Ortego was called on behalf of Petitioner, and upon cross-examination, was asked whether she chose Petitioner over her children. Vol II, p. 186-87. After answering that she did not, she was asked whether she gave up custody of her daughter in order to stay with Petitioner. Id. at 191, l. 13-19. Petitioner apparently concedes that the evidence was relevant, arguing only that its probative value was substantially outweighed by unfair prejudice. Brief in Support of Petition, p. 32. The complaint of Amanda Watson was brought out during the cross-examination of another defense witness, Marlin Keys, a lieutenant with the Marlow Police Department and Petitioner's former supervisor, after he had been asked on direct examination how he would rate Petitioner's "overall job performance" as a police officer and about the number of citizen complaints against Petitioner. Tr. Vol. II, p. 228, l. 9-16. Lt. Keys responded that Petitioner was an "average" police officer, and average on complaints although "[s]ome of them were a little more unusual than the other officers." Id. at l. 11-16. Lt. Keys was also asked if he had occasion to notice from computer arrest printouts whether Petitioner had "any more arrests, contacts with young girls and women than with the other areas," to which he answered "[n]o, those were - - those were about pretty average as far as male/female contacts." Vol. II, p. 228, l. 21-25; p. 229, l. 1-3. The cross-examination then brought out Ms. Watson's complaint. Tr. Vol. II, p. 227, 231-33.

The undersigned finds that counsel was not ineffective for failing to object to either of these lines of questioning. The questions of Michelle Ortego were directly

relevant to her credibility and her bias in favor of Petitioner, and trial counsel opened the door regarding Petitioner's performance through her questioning of Lt. Keys.  Counsel could have reasonably concluded that the questions were not objectionable or, given the strong likelihood that the suggested objections to the cross-examination of either Ms. Ortego or Lt. Keys would have been overruled, that it would not be in her client's interest to make such fruitless objections.[3]  On the other hand, counsel may have been concerned that if she objected and if the objection had been sustained, the jury might have speculated about what the testimony would have been, when she knew that Lt. Keys would testify that the complaint was apparently unfounded.  Vol. II, p. 232, l. 8-18; p. 233, l. 4-14.

### 3.  Failure to Demur to the Information – Joinder of Offenses

Finally, Petitioner claims that trial counsel was ineffective for failing to demur to the information based upon the joinder of all five counts in one information. Brief in Support of Petition, p. 38.  Petitioner claims that the factual allegations were complex and confusing, as shown by one of the jury questions after deliberations had begun, in which the facts of two incidents were "confused and mistaken." Id. at 39.  As noted

---

[3]Petitioner argues that the statements in the complaint form would have been inadmissible under Crawford v. Washington, 541 U.S. 36, 68-69 (2004) and Miller v. State, 98 P.3d 738, 744 (Okla. Crim. App. 2004) (adequate indicia of reliability standard too amorphous to adequately prevent the improper admission of core testimonial statements that the Confrontation Clause meant to exclude). Even assuming that the statements in question are testimonial, and thus covered by the rule in Crawford, the trial in this case took place in August 2003, whereas Crawford was not decided until March of 2004. Accordingly, it would have been impossible for counsel to have objected to the statement on that basis.  The Tenth Circuit has held that Crawford is not retroactively applicable to cases on collateral review, Brown v. Uphoff, 381 F.3d 1219, 1226-27 (10th Cir. 2004), cert. denied 543 U.S. 1079 (2005).  But see Bockting v. Bayer, 399 F.3d 1010, 1019 (9th Cir. 2005), cert. granted 126 S.Ct. 2017 (2006).

above, the Oklahoma Court of Criminal Appeals found that trial counsel's conduct was not ineffective under Strickland.  Summary Opinion, p. 3.

Petitioner contends that trial counsel should have demurred to the information under Okla. Stat. tit. 22, § 504(3) ("defendant may demur to the indictment or information when it appears upon the face thereof ... [t]hat more than one offense is charged in the indictment or information"), and claims that he was prejudiced by counsel's failure to do so, as evidenced by a jury question received after deliberations began which indicated that the jury was confused by the evidence: "When did MH tell [Petitioner] that Bob Hill was her cousin? When he touched her butt or when he offered her liquor."  Tr. Vol. II, p. 313, l. 5-7. Petitioner claims that this shows that the jury was confused as MH never testified that Petitioner offered her any liquor.  Brief in Support of Petition, p. 39.  Petitioner also claims that trial counsel was ineffective for failing to request that the jury be instructed to consider evidence as to each count separately and on its own merit.  Brief in Support of Petition, p. 40.

Respondent contends that severing of the offenses was not warranted and that a demurrer to the information on such grounds would have been futile.  Furthermore, Respondent claims that even if the offenses had been severed, evidence as to the other crimes would have been admissible as part of the res gestae.  Response, p. 16.  Finally, Respondent contends that the jury question does not show confusion as it relates to a collateral fact, and pertained to the sequence of events and not to whether Petitioner actually showed MH alcohol or invited her to have some.  Response, p. 16. Moreover, to the extent there was confusion, severing of the counts would not have alleviated the

problem due to the probable admissibility of the evidence of the other incidents in any event.  Response, p. 16-17.  The undersigned agrees.

Under Oklahoma law, "joinder of separately punishable offenses is permitted if the separate offenses arise out of one criminal act or transaction, or are part of a series of criminal acts or transactions."  Glass v. State, 701 P. 2d 765, 768 (Okla. Crim. App. 1985).  Under this test, "joinder of offenses is proper where the counts so joined refer to the same type of offenses occurring over a relatively short period of time, in approximately the same location, and proof as to each transaction overlaps so as to evidence a common scheme or plan."  Id.  In Gilson v. State, 8 P.3d 883, 904 (Okla. Crim. App. 2000), the Oklahoma Court of Criminal Appeals defined "transaction" for purposes of joinder as a word of "flexible" meaning which may comprehend a series of many occurrences depending not so much upon the immediateness of their connection as upon their logical relationships.  Under this test, it seems particularly unlikely that any demurrer on the basis of joinder would have been successful.  Here the offenses occurred at approximately the same time, in the same location, and involved the same group of friends with whom Petitioner had a connection through his girlfriend, Michelle Ortego.  Moreover, even if trial counsel would have successfully demurred to the information and had the offenses severed,  the other offenses could have been admissible in a trial of the others pursuant to Okla.  Stat.  tit.  12, § 2404(B) as evidence of other crimes or wrongs to prove motive, intent, common scheme or plan, or identity.  Myers v. State, 17 P.3d 1021, 1029-30 (Okla. Crim. App. 2001); Lott v. State,  98 P.3d 318, 334 (Okla. Crim. App. 2004), cert. denied 544 U.S. 950 ( 2005).  Thus, Petitioner cannot show that there is a reasonable probability

that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. In light of the foregoing, and the discussion of Petitioner's other ineffective assistance claims to follow, it is recommended that relief be denied on Ground One.

## B.  PROSECUTORIAL MISCONDUCT

In Ground Two, Petitioner claims that "egregious" comments made by the prosecutor during closing argument deprived him of due process and a fundamentally fair trial. He also claims that the failure of trial counsel to object to the comments constituted ineffective assistance of counsel under the Sixth Amendment.    Brief in Support of Petition, p. 43.  Petitioner raised these same claims on direct appeal, and the Oklahoma Court of Criminal Appeals found that "the errors complained of were not met with objections and did not rise to level of plain error" and that "[c]ounsel was not ineffective for failing to object to these comments."  Summary Opinion, p. 3.

The Tenth Circuit has held that unless the comments of a prosecutor violate a specific constitutional right, the test for determining whether or not prosecutorial comments violate due process is that set forth by the Supreme Court in Donnelly v. DeChristoforo, 416 U.S. 637 (1974); Brecheen v. Reynolds, 41 F.3d 1343, 1355 (10th Cir. 1994); Mahorney v. Wallman, 917 F.2d 469, 472 (10th Cir. 1990). In Donnelly, the Supreme Court held that prosecutorial comments violate due process only when the prosecutor's conduct is so egregious in the context of the entire trial that it renders the trial fundamentally unfair. Donnelly v. DeChristoforo, 416 U.S. 637, 642-48 (1974). Under this test, it is not enough for Petitioner to show that the remarks were undesirable

or even universally condemned.  Id. at 642-43.  Rather, the relevant question is whether the remarks so infected the trial with unfairness as to make the resulting conviction a denial of due process.  Darden v. Wainwright, 477 U.S. 168, 181 (1986). To establish that a prosecutor's remarks were so inflammatory that they prejudiced the substantial rights of Petitioner, Petitioner must demonstrate either persistent and pronounced misconduct or that the evidence was so insubstantial that absent the remarks, a conviction probably would not have occurred.  See Thomas v. Cowley, No. 90-6105, 1991 WL 151773 at * 9 (10th Cir. Aug. 8, 1991).

Petitioner cites the very beginning of the prosecutor's closing argument as his first example of misconduct:

> Gentlemen, before we get started here I'd like for you to reach over to the closest woman next to you.  I want you to put your hand on her leg.  I want you to run your hand up to her vaginal area.  If you don't like that, grab her butt.  No takers.
>
> Now, Ladies, of course you don't mind.  Right.  It's okay.
>
> Well, of course it isn't.  That was ridiculous, wasn't it?  But here's the thing, Ladies and Gentlemen, how did you feel when I said that.  Was there any fear.  Was there any madness.  Was there any emotion.

Vol. II, p. 290, l. 13-23.  Petitioner also complains of later in the closing argument in which the prosecutor referred to the three victims as "a smorgasbord of human flesh." Vol. II, p. 291, l. 16-17.  He contends that these comments had no purpose other than to evoke alarm and to inflame the passions of the jury, and that the prejudicial effect of the comments is obvious given the weak evidence and heavy sentences on three of the counts.  Brief in Support of Petition, p. 45.  Respondent answers that the prosecutor's comments did not "tip the scales" in favor of the State, nor did the comments affect the

16

jury's ability to judge the evidence as shown by the fact that the sentencing range on each count was one to twenty years imprisonment, and Petitioner received sentences of one year on three counts, three years on one count and ten years on the last count.  Response, p. 21 (citing <u>Moore v. Gibson</u>, 195 F.3d 1152, 1171 (10th Cir. 1999)).  With regard to the "smorgasbord" comment, Respondent contends that this was reasonable inference from the evidence that Petitioner "took advantage of frequent opportunities to be left alone with the girls, and used them for himself."  The undersigned agrees and finds that the prosecutor's first comment, was not so egregious in the context of the entire trial so as to render the trial fundamentally unfair.  <u>See</u> <u>Moore</u>, 195 F.3d at 1173.  Although the statement may have been inappropriate, there was no persistent or pronounced misconduct, and the evidence was not so insubstantial that without the remarks, a conviction would probably not have resulted.  In fact, when read in context, the point being made was that while "touching" seems innocuous, it is not when the areas touched are private areas of the body.  Tr. Vol. II, p. 290-91.  As such, it was a fair comment on the evidence.  The second comment, although colorful, was also a fair comment on the evidence that had been presented.  The undersigned also notes that the transcript reveals a professionally-tried case in which neither counsel for Petitioner nor the State engaged in underhanded tactics, and in which the trial court dealt with the parties in an evenhanded and professional manner.  As stated by the prosecutor in his closing argument, this case came down primarily to a credibility determination, and whether the jury believed the Petitioner or the girls who testified against him.  Tr. Vol. II, p. 308.  The

sentences do not show a jury that was inflamed by passion as shown by the sentences that varied widely from count to count.

Petitioner's next allegation of prosecutorial misconduct concerns what he characterizes as an effort to go outside the record in his closing, when the prosecutor referred to a trial observer's comment that the victims were "babies." "When they walked off the stand, and like I say, you all saw them, and I made a comment, a comment about -- about how they were crying, and this agent looked at me and said Jerry, they're babies. Wow.  They're twelve, but what is a twelve year old."  Tr. Vol. II, p. 309, l. 21-25. Respondent contends that this error was invited by Petitioner's counsel when she argued that they were "smart little girls" and "if you're a twelve year old little girl, young lady, you should know when something happened...."  Vol. II, p. 305, l. 9. 11-12.  Respondent further contends that upon Petitioner's objection prior to the prosecutor's statement relating the conversation in which the victims were referred to as "babies," the trial court found the statement proper – accepting the prosecutor's argument that it went to credibility.  Vol. II, p. 309, l. 5-17.  Once again, the undersigned agrees that the statement does not constitute prosecutorial misconduct such as would violate Petitioner's right to fundamental due process. The comment did not  refer to something completely outside of the jury's own observations, and both sides argued about the relative maturity of the victims.

With regard to Petitioner's final claim that trial counsel was ineffective for failing to object to the comments, the Oklahoma Court of Criminal Appeals specifically found that counsel was not ineffective.  Summary Opinion, p. 3.  It also reviewed the comments

themselves, and found no fundamental error.  Id, As noted above, the comment did not violate Petitioner's right to fundamental due process; thus, the Oklahoma Court of Criminal Appeals' decision was neither an unreasonable application of clearly established federal law or an unreasonable determination of the facts. Accordingly, neither the comments themselves, nor trial counsel's failure to object to them entitle Petitioner to relief, and it is recommended that relief be denied as to Ground Two.

## C.  OTHER CRIMES EVIDENCE

In his third ground for relief, Petitioner argues that the trial court improperly admitted evidence of an uncharged sexual assault of another underage girl, and that the prejudice caused by admission of the evidence was exacerbated by confusing contemporaneous instructions.  Brief in Support of Petition, p. 53-56.  Petitioner raised this same claim on direct appeal, and the Oklahoma Court of Criminal Appeals found that the evidence was properly admitted.  Summary Opinion, p. 3.

At the outset it should be noted that when no particular constitutional guarantees are implicated, evidentiary objections raise questions merely of state law and, therefore, are cognizable in a federal habeas action only if the alleged error was so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process. Revilla v. Gibson, 283 F.3d 1203, 1212 (10th Cir. 2002).  A federal court "will not disturb a state court's admission of evidence of prior crimes, wrongs or acts unless the probative value of such evidence is so greatly outweighed by the prejudice flowing from its admission that the admission denies defendant due process of law." Scrivner v. Tansy, 68 F.3d 1234, 1239-40 (10th Cir. 1995); accord Duvall v. Reynolds, 139 F.3d 768, 788

(10th Cir. 1998) (finding that admission of prior acts testimony, even if constitutionally erroneous, would be harmless because any such error did not have a substantial and injurious effect on the jury's verdict).  In other words, federal habeas relief does not lie for errors of state law absent a determination that the state court's finding was so arbitrary and capricious as to constitute an independent due process violation.  <u>Fields v. Gibson</u>, 277 F.3d 1203, 1220 (10th Cir. 2002) (citing <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990)).  Thus, Petitioner's burden is a heavy one; he must show that the state's failure to follow its own law is arbitrary in the constitutional sense, that is, it must shock the judicial conscience.  <u>Aycox v. Lytle</u>, 196 F.3d 1174, 1180 (10th Cir.1999).

The undersigned finds that Petitioner has failed to sustain this burden in the present case.  First, the State provided notice of other crimes evidence ten days prior to trial, as required by <u>Burks v. State</u>, 594 P.2d 771, 774 (Okla. Crim. App. 1979), <u>overruled in part on other grounds</u>, <u>Jones v. State</u>, 772 P.2d 922, 925 (Okla. Crim. App. 1989). <u>See</u> Tr. Vol. II, p. 137, l. 7-10.  Second, in Oklahoma, evidence of uncharged other crimes is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident." <u>Douglas v. State</u>, 951 P.2d 651, 673 (Okla. Crim. App. 1997).  In this case, the trial court heard argument from counsel for both the State and Petitioner regarding the relevance of the evidence to show motive, intent, plan and scheme.  <u>Id.</u> at l. 18-19.  In particular, the State argued that there is "greater latitude"[4] for the introduction of evidence of prior sexual assaults, that the evidence showed a common plan in that like the case at bar, BT was also very young, Petitioner offered her alcohol,

---

[4]<u>Meyers v. State</u>, 17 P.3d 1021 (Okla. Crim. App. 2000).

20

and then isolated her from other people who were around at the time in order to sexually assault her. Id. at p. 138, l. 12-16; p. 140, l. 1-18. Although trial counsel argued that a rape is different than a molestation, that BT was already drinking, and that Petitioner assumed she was older, Tr. Vol. II, p. 140, l. 24-25; p. 141, l. 5-10, there was nothing arbitrary or capricious about the trial court's decision to admit the evidence over such argument. Petitioner also argues that the probative value of this evidence was outweighed by the prejudice caused by its admission, however, the trial court specifically considered and rejected this as did the Oklahoma Court of Criminal Appeals.  Although other crimes evidence involving prior molestation or sexual assault will always be prejudicial in some sense, exclusion on that basis alone would render all such evidence excludable.  Aside from that, Petitioner has pointed to nothing about the testimony of BT that was so overly prejudicial that it made the trial court's decision to admit it arbitrary and capricious.

Petitioner argues that the contemporaneous instructions exacerbated the prejudice. Immediately prior to admission of the testimony, the trial court issued the following instruction:

> Ladies and Gentlemen, Miss [BT] has been called and I anticipate that she will be testifying about an offense that the [Petitioner] allegedly committed other than the matters that are charged in this Information.
>
> Now all of you understand that a person cannot be convicted of one thing because you may find that he or she committed another, and that's not what this evidence is being admitted for.  It again is about an alleged other offense, but it's being admitted as the evidence may bear on issues that you'll need to decide as to the guilt or innocence of this [Petitioner], and by that I mean it's being received on the issues of [Petitioner's] intent plan, knowledge and absence of mistake or accident.  It's not being introduced for his guilt or innocence of the charges against him, but as it may shed light on those other matters that will need to be considered by you.  Okay?

Tr. Vol. II, p. 144, l. 23-25; p. 145, l. 1-13. Petitioner argues that although the trial court did issue both contemporaneous and final instructions, the contemporaneous instruction was "confusing at best." Brief in Support of Petition, p. 55. Respondent contends that when considered in its entirety, the contemporaneous instruction is clear in its aim to instruct the jury as to the limited purpose of the other crimes evidence. Response, p. 28. He also contends that the written instruction further clarified the matter, and that in closing argument, defense counsel further emphasized the limited purpose of the evidence. <u>Id.</u> (citing Ex. J). The undersigned agrees, and finds that Petitioner's attempt to isolate the phrase "it's being admitted as the evidence may bear on issues that you'll need to decide as to the guilt or innocence" is disingenuous, given the fact that the clear emphasis of the instruction as a whole is quite the opposite. Moreover, the final instruction is clear,[5] and Petitioner's trial counsel reiterated the limited purpose of BT's testimony during closing argument. Tr. Vol. II, p. 297-98. Accordingly, it is recommended that relief be denied on Ground Three.

## D. FAILURE TO ENSURE COMPLETE RECORD

In his fourth ground for relief, Petitioner claims that his right to due process was violated when the trial court failed to preserve its two supplemental instructions containing written responses to questions asked by the jury during deliberations. Brief

---

[5]Evidence has been received that the defendant has allegedly committed an offense other than that charged in the information. You may not consider this evidence as proof of the guilt or innocence of the defendant of the specific offenses charged in the information. This evidence has been received solely on the issues of the defendant's alleged intent, scheme, plan, knowledge, or absence of mistake or accident. This evidence is to be considered by you only for the limited purpose for which it was received. Response, Ex. J (Instruction No. 12).

in Support of Petition, p. 57.  This same error was raised on direct appeal, and upon Petitioner's request, the Oklahoma Court of Criminal Appeals remanded the case to the state district court to conduct an evidentiary hearing in order to correct the appeal record with regard to these instructions.  Response, Ex. E. Following that hearing, the Oklahoma Court of Criminal Appeals found that the hearing cured the error and that no prejudice resulted.  Summary Opinion, p. 3.

During jury deliberations, the jury sent the following questions to the trial judge: (1) "When did MH tell [Petitioner] that Bob Hill was her cousin?  When he touched her butt or when he offered her liquor"; (2)   "On the sentence, is the jury able to ask questions concerning if the sentence will run concurrently.  Also if the sentence should be (20 yrs?) how much time will he serve." Tr. Vol. II, p. 313, l. 5-7, 10-12.  The record reflects that supplemental instructions one and two, respectively, were prepared and delivered to the jury in response to these questions, but the instructions were not read into the record and were never found following the trial in order to be made a part of the record.  Id.; See Response, Ex. J.  Petitioner claims that the trial court had a duty to safeguard the record, and that its failure to do so in this case was prejudicial because "there is now no way to review the accuracy or propriety" of the trial judge's responses. Brief in Support of Petition, p. 61.  Petitioner appears to be arguing that this due process claim is not moot because according to Petitioner, the trial judge who conducted the hearing on remand made a finding that "the content of the supplemental instructions (responses) given at trial could not be definitively and conclusively answered by any testimony taken at the evidentiary hearing."  Brief in Support of Petition, p. 60-61.

23

Respondent contends, however, that the trial judge did testify as to what his answers to the jury questions were, and that as it can be determined that no prejudicial error was committed, the failure to report all of the proceedings does not entitle Petitioner to relief.   Response, p. 29-30.   The undersigned agrees.   First, it appears again that Petitioner is being less than candid with the Court in his description of the trial court's finding on remand regarding the missing instructions.   The finding was actually as follows:

> I find that the appeal record is not complete and - - or to the extent that neither question as to what happened to the supplemental responses, nor the content of the responses can be definitively and conclusively answered *by some memorialization that was made during the course of this trial, or during deliberations, or after deliberations was completed.*  That the District Court Clerk *cannot file any items* that could possibly cure the record deficiency.

Evid. Hr'g, p. 86,  l. 23-25; p. 87, l. 1-1-5 (emphasis added).   Accordingly, the finding actually went to whether there was anything that could be *filed* that memorializes the content of the instructions, thus completing the record – not to whether the *content* itself remained a mystery.   Quite the contrary, the trial judge unequivocally testified that his answer to the first question was "In response to your question, you need to rely upon your memory of the testimony as it was given." Evid. Hr'g, p. 60, l. 22-25; p. 61, 1-12.  His answer to the second question regarding sentencing was "these are not proper matters for your consideration."   Evid. Hr'g, p. 62, l.19-25; p. 63, l. 1-20.  Petitioner characterizes the trial judge's responses to the jury questions as "irretrievably lost," when the trial judge in fact testified that he answered as stated above in accordance with thirty years of judicial experience.  Both the bailiff and the court reporter had similar recollections as

to the trial judge's responses and/ or standard responses to the two questions.  Id. at p. 27, l. 14-23; p. 28, l. 1-8; p. 37, l. 4-16; p. 79, l. 16-25; p. 80, l. 1-12, 24; p. 81, l. 1. Accordingly, the trial court's failure to preserve a written record of proceedings does not entitle Petitioner to relief as he cannot point to any specific prejudice he has suffered from the alleged errors.  See United States v. Anzalone, 886 F.2d 229, 232 (9th Cir.1989). United States Thanh, 100 Fed.Appx. 697, 702, 2004 WL 1277179, at *3 (9th Cir. June 9, 2004).  It is therefore recommended that relief be denied as to Ground Four.

**E.  SUFFICIENCY OF THE EVIDENCE**

In Ground Five, Petitioner claims that the State failed to present sufficient evidence to support his convictions for lewd molestation on Counts 3, 4, and 5.  With regard to Counts 4 and 5, Petitioner contends that the State failed to prove that the touching was done in a lewd or lascivious manner.  Brief in Support of Petition, p. 66. Petitioner contends that the evidence was insufficient with regard to Counts 3 and 4 because the evidence showed that the room was so crowded that the acts were physically and  logistically  impossible.  Id. at 67.  Rejecting this claim on direct appeal, the Oklahoma Court of Criminal Appeals found that "in a light most favorable to the State, any rational trier of fact could have found the essential elements of the crimes beyond a reasonable doubt."  Summary Opinion, p. 4.

In reviewing the sufficiency of the evidence for purposes of habeas corpus relief, clearly established Supreme Court precedent provides that "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the elements of the crime beyond a reasonable

doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Romano v. Gibson, 239 F.3d 1156, 1164 (10th Cir. 2001).  In applying this standard, the reviewing court may not weigh conflicting evidence or consider the credibility of witnesses.  Grubbs v. Hannigan, 982 F.2d 1483, 1487 (10th Cir. 1993).  Rather, the court must "accept the jury's resolution of the evidence as long as it is within the bounds of reason." Id.

An even more limited review is required by 28 U.S.C. § 2254(d) where, as here, a habeas petitioner's sufficiency of the evidence challenge has already been decided on the merits in state court. Valdez v. Ward, 219 F.3d 1222, 1237 (10th Cir. 2000).  Pursuant to § 2254(d), Petitioner is not entitled to relief unless the Oklahoma Court of Criminal Appeals' determination that there was sufficient evidence was unreasonable.  Torres v. Mullin, 317 F.3d 1145, 1151 (10th Cir. 2003).  "That amounts to deference squared." Torres v. Lytle, No. 03-2098, 2004 WL 103557 at *2 (10th Cir. Jan. 23, 2004). Tenth Circuit precedent leaves unclear whether subsection (d)(1) or (d)(2) applies when reviewing a state court's decision regarding sufficiency of the evidence questions. Valdez, 219 F.3d at 1237 (citing Hogan v. Gibson, 197 F.3d 1297, 1306 (10th Cir. 1999) (describing conflict in Tenth Circuit cases)); see also Willingham v. Mullin, 296 F.3d 917, 929-30 (10th Cir. 2002) ("This court has not decided, for AEDPA purposes, whether such issues of evidentiary sufficiency are legal and hence governed by § 2254(d)(1), or factual and hence governed by §§ 2254(d)( 2), (e)(1) . . . in any event, however, the critical question is 'whether the . . . decision . . . was reasonable.'") (quoting McCracken v. Gibson, 268 F.3d 970, 981 (10th Cir. 2001)).  In this case, applying either subsection

(d)(1) or subsection (d)(2), Petitioner is not entitled to relief for the reasons discussed below.

Under Oklahoma law, the offense of lewd molestation requires proof beyond a reasonable doubt of the following: (1) the Defendant, being at least three years older than the victim; (2) knowingly and intentionally; (3) looked upon, touched or felt; (4) the body or private parts; (5) of any child under sixteen years of age; (6) in any lewd or lascivious manner.  See Okla. Stat. tit. 21, § 1123(A)(2); see also OUJI-CR 2d 4-129a .

**1.  Sufficiency of the Evidence – Lewd or Lascivious Manner**

Petitioner first contends that the evidence was insufficient to satisfy the sixth element with regard to two of the counts against him.  First, Petitioner contends that the evidence was insufficient to show that the touching of BJ's upper leg on May 2, 2003, as charged in Count 4, was done in a lewd or lascivious manner; and second, was insufficient with regard to the incident in which he hugged MH after calling her into his bedroom to ask her whether or not she had been drinking, as alleged in Count 5.

Respondent claims that the evidence was sufficient to show the sixth element with regard to Count 4 in that on the evening of May 2, 2003, BJ, KLR, and MH were all lying together on a pallet on the floor in the bedroom of Petitioner's son, JL, when Petitioner asked if he could watch television with them.  Tr. Vol. II, p. 98, l. 1-25; p. 99, l. 1-4. Petitioner laid down next to BJ, who was on the outside and began to rub her leg "up by [her] butt" and then she turned away and went to sleep. Id. at p. 98, l. 1-2; p. 99, l. 10-22. He then told her to come to the kitchen, and she asked KLR to come with her, where Petitioner offered them "Hot Damn" liquor. Id. at 100, l. 7-24.  When they declined, he said he had some vodka instead, Tr. Vol. II, p. 101, l. 10-12, which they also declined. They

then returned to the bedroom, and BJ laid in the middle and away from Petitioner because she was afraid it would happen again. Id. at p. 101, l. 13-21.  Petitioner then laid down next to KLR, who was now on the outside, licked her ear, and rubbed her buttocks under the cover.  Id. at p. 64, l. 22-25; p. 65, l. 1-22; p. 67, l. 1-20; p. 102, l. 9-25; p. 103, l. 1-19. Taking this evidence in the light most favorable to the State, any rational trier of fact could conclude that the touching of BJ's leg was done in a lewd and lascivious manner, defined as "an unlawful indulgence in lust; eager for sexual indulgence." Rich v. State, 266 P.2d 476, 479 (Okla. Crim. App.1954).

The same is true of the hug charged in Count 5.  The evidence with regard to that count was that Petitioner had called each of the children into his bedroom to ask if they had been drinking.  Tr. Vol. II, p. 119, l. 19-25. After asking MH whether she had been drinking, he hugged her and placed his hands on her buttocks. Id. at p. 120, l. 1-25. It was not until she said that she would not drink because her cousin was the local chief of police that Petitioner moved his hands from MH's buttocks.  Id. at p. 120, l. 1-19. The evidence was that  Petitioner also placed his hands on KLR's buttocks in his room that night, and propositioned her about oral sex the following morning in the bathroom.  Tr. Vol. II, p. 63, l. 1-24; p. 64, l. 9-21. Once again, this evidence, when viewed under the applicable standard is sufficient.

## 2.  The Lack of Space in JL's Bedroom

Petitioner next claims that the evidence is insufficient to support either the rubbing of BJ's upper leg as charged in Count 4, or the rubbing of KLR's buttock or licking of her ear, as charged in Count 3, because the bedroom in which the children were laying was so full of various items that there was not room for him to lay down next to them.  Brief in

Support of Petition, p. 67-68.  Petitioner is in effect asking this Court to reweigh the same evidence heard by the jury, however, as both BJ and KLR testified that Petitioner did in fact lay down next to them in the room and KLR specifically testified that there was room for all of them to lie flat. Id. at p. 79, l. 23-25; p. 80, l. 1-4; p. 99, l. 5-6. Petitioner's fellow officer, Antonio Aguilera, testified that there was nothing unusual in the room.  Id. at 239, l. 24-25; p. 240, l. 1. Petitioner did put on evidence regarding the storage of tires, a washer and dryer, and bicycles in the room in addition to JL's bed, but it was for the jury to decide whether there was nonetheless room for the incident to have taken place and whether the girls were credible in their account of it.  In light of the foregoing, it is recommended that relief be denied as to Ground Five.

## F.  SUFFICIENCY OF THE EVIDENCE TO BIND OVER FOR A PRELIMINARY HEARING

Next, Petitioner claims that there was not sufficient evidence to bind him over on Count 4 following the preliminary hearing, and that it was fundamentally unfair to hold him for trial where there was a complete lack of evidence as to one or more elements of the crime charged.  Brief in Support of Petition, p. 68.  The Oklahoma Court of Criminal Appeals considered this same claim for plain error on direct appeal, and found none. Summary Opinion, p. 1-2.

Respondent contends that the sufficiency of the evidence to establish probable cause at a preliminary hearing cannot be considered in a federal habeas action. Response, p. 37.   Alternatively, it is Respondent's contention that the evidence adduced at the preliminary hearing was sufficient to show probable cause that the crime charged in Count 4 had been committed by Petitioner. Id. at 37-38.

Initially, the undersigned agrees that the issue raised by Petitioner is one of state law not cognizable in this federal habeas action.  "In conducting habeas review, a federal court is limited to deciding whether a *conviction* violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991) (emphasis added). As noted above, the evidence was sufficient under applicable standards to support Petitioner's conviction on Count 4, and there is nothing independent of the sufficiency of the evidence question related to the preliminary hearing about which Petitioner complains. See Snow v. State  489 F.2d 278,  279 (10th Cir. 1973) ("there is nothing in the record to indicate that anything transpired at the preliminary hearing which denied appellant a fair and impartial trial").

Moreover, the evidence brought forth in the preliminary hearing was sufficient to support probable cause as to Count 4.  Although BJ's testimony was not as fully developed at the preliminary hearing as it was at trial, she did  indicate to the trial court exactly where Petitioner rubbed her leg, stated that he then asked her to go to the kitchen where he offered  her both "Hot Damn" liquor and vodka, and that he appeared to touch KLR "around her butt" after they returned to the pallet in the bedroom; she also testified that she considered the touch inappropriate and that the incident scared her.  Prelim. Hr'g, p. 46, l. 11-22; p. 47, l. 2-21;, p. 48, l. 5-12, 18-25;  p. 49, l. 1-25; p. 50, l. 10-12; p. 51, l. 14-16.

Petitioner also claims that trial counsel was ineffective for failing to move to quash the information as to Count 4 after the preliminary hearing.  However, it is unlikely given the evidence cited above that such a motion would have been successful.  Moreover,

30

under Oklahoma law, such a motion even if granted "shall not be a bar to a further prosecution for the same offense." Okla. Stat. tit. 22, § 504.1(D). Given the ultimately sufficient evidence adduced to support a conviction upon Count 4, it is certain that there was also enough evidence to support a probable cause determination on that count. Accordingly, Petitioner cannot show any prejudice caused by trial counsel's failure to move to quash the information.  It is thus recommended that relief be denied as to Ground Six.

**G.  CUMULATIVE EFFECT**

Petitioner argues that the cumulative effect of the errors alleged in Grounds One through Six and rendered his trial fundamentally unfair.  Brief in Support of Petition, p. 74.  However, "[a] cumulative-error analysis  aggregates all the errors that individually have been found to be harmless and analyzes whether their cumulative effect on the outcome of the trial is such that collectively they are not harmless." Van Woudenberg ex rel. Foor v. Gibson, 211 F.3d 560, 571 (10th Cir. 2000), overruled on other grounds, McGregor v. Gibson, 248 F.3d 946 (10th Cir. 2001).  Because cumulative-error analysis "does not apply to the cumulative effect of non-errors," Moore v. Reynolds, 153 F.3d 1086, 1113 (10th Cir. 1998), Petitioner must first show that two or more actual errors occurred in order to be entitled to relief.  Therefore, because the undersigned has found that Petitioner's Grounds One through Six are without merit, his cumulative error argument is unavailing.  Accordingly, it is recommended that relief also be denied on Ground Seven.

31

## H.  EVIDENTIARY HEARING

Finally, Petitioner urges the Court to grant him an evidentiary hearing "with respect to the evidence with which he sought to supplement the record in his state court direct appeal in support of his ineffective assistance of trial counsel claim for the purpose of fully developing such evidence and its import to the issues...."  Brief in Support of Petition, p. 76. Respondent asserts that Petitioner is not entitled to an evidentiary hearing in this matter because he was not diligent in attempting to develop his claim, and/or fails qualify for an evidentiary hearing under either AEDPA or pre-AEDPA standards. Response, p.  41-42.

The AEDPA restricts the Court's ability to grant evidentiary hearings to certain limited circumstances. Section 2254(e)(2) provides that "[i]f the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant" can satisfy one of the two exceptions listed in § 2254(e)(2)(A) and (B).  First, a habeas petitioner must show that the claim relies on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable" or "a factual predicate that could not have been previously discovered through the exercise of due diligence." 28 U.S.C. § 2254(e)(2)( A)(i)-(ii); Medlock v. Ward, 200 F.3d 1314, 1323 (10th Cir. 2000). Second, a petitioner must show that the facts underlying his claim would "establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."  28 U.S.C. § 2254(e)(2)(B).  If, however, the habeas petitioner did not fail to develop the factual basis

of a claim in State court, then § 2254(e)(2) is not applicable and the Court must analyze whether a hearing is appropriate or required under the pre-AEDPA standard.  Bryan v. Mullin, 335 F.3d 1207, 1214 (10th Cir.2003) (en banc), cert. denied, 541 U.S. 975 (2004). "Mere requests for evidentiary hearings will not suffice; the petitioner must be diligent in pursuing the factual development of his claim." Cannon v. Mullin, 383 F.3d 1152, 1176 (10th Cir. 2004) (quoting Dowthitt v. Johnson, 230 F.3d 733, 758 (5th Cir. 2000), cert. denied 544 U.S. 928 (2005).

Here, it is not necessary to determine whether Petitioner has been diligent in pursuing the factual basis for his claims, because he cannot satisfy either one of the two exceptions listed in § 2254(e)(2)(A) and (B), or his right to a hearing under pre-AEDPA standards. Under the prior standard, a petitioner had to present "allegations which, if proved, would entitle him to [habeas] relief." Stouffer v. Reynolds, 168 F.3d 1155, 1168 (10th Cir. 1999).  The undersigned finds that none of Petitioner's claims would entitle him to federal habeas relief even with the presentation of evidence.  As shown above, Petitioner's claims are not legally sufficient. Consequently, Petitioner is not entitled to an evidentiary hearing under the standard in effect prior to adoption of the AEDPA.  See, e.g., Fox v. Ward, 200 F.3d 1286, 1302 (10th Cir. 2000) (upholding the district court's denial of an evidentiary hearing when the petitioner had not "ma[d]e allegations which, if proved, would entitle him to relief"). Under these circumstances, the Court should deny Petitioner's request for an evidentiary hearing.

## **RECOMMENDATION**

For the reasons discussed above, it is recommended that the petition for writ of habeas corpus be denied. Petitioner is advised of his right to file an objection to this Report and Recommendation with the Clerk of this Court by July 18, 2006, in accordance with 28 U.S.C. § 636 and Local Civil Rule 72.1. Petitioner is further advised that failure to make timely objection to this Report and Recommendation waives any right to appellate review of both factual and legal issues contained herein. Moore v. United States, 950 F.2d 656 (10th Cir. 1991). This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter.

**Entered this 28TH day of June, 2006.**

DOYLE W. ARGO
UNITED STATES MAGISTRATE JUDGE

34